JAMES N. STROBHAR, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error.*

1. In a prosecution for embezzlement, it is sufficient for the indictment to charge that the property embezzled came into the defendant's possession and was under his care "by nature of" his employment, although the statute makes it a crime to embezzle property which came into his possession and was his care "by reason of" his said employment.

2. In an indictment for embezzlement, it is sufficient to describe the defendant as a servant or agent, the terms used in the statute, without setting out in detail his duties or the purposes for which he was employed.

3 In an indictment for embezzlement, the words, "of which corporation, he, the said J. N. S. was then and there the servant and agent" is a sufficient allegation that the defendant was the servant and agent of the corporation previously named.

4. In an indictment for embezzlement, ownership of personal property is usually alleged by using the words "of the moneys of" the owner, or "of the property of," or "of the goods and chattels of." The words "belonging to" are sufficient.

5. Bad grammar does not render an indictment ill. A relative pronoun must be referred to that antecedent to which the tenor of the instrument and the principles of law require that it should relate, whether exactly according to the rules of syntax or not. In other respects also, the court, for determining the meaning, will consult sound sense to the disregard of captious objections; and of two otherwise permissible renderings, it will accept the one sustaining the proceeding.

6. Where the grand jury does not know the specific description of money alleged to have been embezzled it may so aver, and the allegation of the embezzlement of a stated number of dollars, followed by the statement that a more particular description thereof is unknown to the indicting grand jury is all that is required to make the description sufficient.

7. No indictment will be quashed on account of any defect in its form unless it is so vague, indistinct and indefinite as to mis-

lead the accused and embarrass him in the preparation of his defense, or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense.

8. If a statute makes it punishable to do a particular thing specified, "or" another thing, "or" another, one commits the offense who does any one of the things, or any two, or more, or all of them. The indictment may charge him with any one or with any larger number, at the election of the pleader; employing, if the allegation is of more than one, the conjunction "and" where "or" occurs in the statute.

9. Where a plea of *autrefois acquit* is plainly frivolous and trifling, it may be stricken out on motion; and where the plea, if true, fails to state any reason why the defendant could not again be tried for said offense, it will be treated as a nullity and frivolous and stricken out on motion. A demurrer is not necessary to disposeof such a plea.

10. The plea of *autrefois acquit* consists partly of matter of record and partly of matter of fact. The matter of record is the former indictment and acquittal or conviction, and the matter of fact is the averment of the identity of the offense and of the person.

11. To constitute a former jeopardy, the court in which the former prosecution took place must have had jurisdiction of the offense and of the person of the defendant; otherwise, its judgment must be null and void.

12. While it is true that a person shall not be subject for the same offense to be twice put in jeopardy, yet an acquittal in Georgia for a crime against the sovereignty of the State of Florida alone, can not in any legal sense constitute that jeopardy.

13. Where an offense was committed, both in Georgia and Florida and was a transgression against the laws of both states, an acquittal or conviction in the State of Georgia for a violation of its laws will not prevent a prosecution in the State of Florida for the act in violation of the laws of the latter State.

14. The title to chapter 4395, Acts of 1895, which reads, as shown from the enrolled bill in the office of the Secretary of State,

"An Act to amend section 2440 and 2441 of the Revised Satutes of the State of Florida, defining and punishing grand and petit larceny," is sufficiently broad to embrace the subject of grand larceny, and the Act, therefore, is not in violation of section 16 of Article III of the Constitution of 1885.

15. Assignments of error that, "the court erred in overruling defendant's objections to the admissibility in the several instancesduring the progress of the trial as shown by the record of the tes-timony" are too general, and will not be considered.

16. The trial court did not err in refusing to give the following instruction requested by the defendant: "The court instructs the jury that upon the trial of a criminal cause, if a reasonable doubt of any facts necessary to convict the accused is raised in the minds of the jury by the evidence itself. or by the ingenuity of counsel upon any hypothesis reasonably consistent with the evidence, that doubt is decisive in favor of the prisoner's acquittal."

17. The true view of the position of counsel before the jury, is that of aids or helps. The duties of the advocate are among the most elevated functions of humanity. Whilst he is the representative of his client's cause, yet these considerations insure all honorable advocacy. His business is to comment on the evidence . .. . to sift, compare and collate the facts . . . to draw his illustrations from the whole circle of the sciences . . . to reason with the accuracy and power of the trained logician, and enforce his cause with all the inspirations of genius and adorn it with all the attributes of eloquence.

18. Having already given in substance and effect, an instruction requested by the defendant, the trial judge cannot be required to repeat the same idea in different language.

19. Where the evidence is legally sufficient to support the verdict the appellate court will not disturb the verdict.

This case was decided by Division B.

Writ of Error to the Circuit Court for Alachua County.

The facts in the case are stated in the opinion of the court.

*Clark & Fielding, Robt. W. Davis* and *B. A. Thrasher,* for plaintiff in error.

*W. H. Ellis,* Attorney General, *J. M. Rivers,* State Attorney for the Eighth Judicial Circuit, and *Syd L. Carter,* for the state.

PARKHILL, J.—The plaintiff in error, James N. Strobhar, who will be called the defendant elsewhere in this opinion, was convicted of the crime of embezzlement, and seeks relief here by writ of error.

The indictment, omitting the formal parts, is as follows: "The grand jurors of the state of Florida, inquiring in and for the body of the county of Alachua, upon their oaths do present that James N. Strobhar, late of the county of Alachua aforesaid, in the circuit and state aforesaid, laborer, on the 28th day of August, in the year of our Lord one thousand nine hundred and five with force and arms at and in the county of Alachua aforesaid. Did embezzle and fraudulently convert to his own use certain money of the Atlantic Coast Line Railroad Company, a corporation created and existing under the laws of the state of Virginia, and doing business in the said county of Alachua and state of Florida, of which corporation he, the said James N. Strobhar, was then and there the servant and agent, without the consent of said corporation, to-wit, seven thousand, five hundred dollars, of the value of seven thousand, five hundred dollars, of the money and property of said corporation, a more particular description of which is to the grand jurors unknown, which on said 28th day of August, A. D., 1905, in said county of Alachua and state of Florida, came into the possession of him, the said

James N. Strobhar, and was then and there under his care by nature of his said employment as such agent and servant. Against the form of the statute in such case made and provided, to the evil example of all others in the like case offending, and against the peace and dignity of the state of Florida."

The first error assigned is the overruling of a motion to quash the indictment. In support of this assignment of error, it is urged that the indictment is defective because it charges that the money embezzled came into the defendant's possession *by nature of* his said employment, following the language of Section 2457 Revised Statutes of 1892, the contention being made that the indictment should charge that money embezzled came into defendant's possession *by reason of* his said employment, as required by the terms of the Act of 1903. It is clear that the last mentioned act repealed Section 2457, Revised Statutes of 1892, because the subsequent enactment was a revision of the subject-matter of the former statute, and was evidently intended as a substitute for it. We are quite sure, however, that the phrase *"by nature of,"* which is the language of the indictment, is equivalent to the phrase *"by reason of,"* which is the language of the existing statute, and that is sufficient. Humphreys v. State, 17 Fla. 381 ; 7 Ency. Pl. & Pr., 423. Nature is defined as meaning character, sort or kind. Standard Dictionary; State v. Murphy, 23 Nev. 390, 48 Pac. Rep. 628. The expression "by nature of his employment" means through the character of his employment, or "by reason of," or on account of his employment. And so, allegations that the property then and there came to the "possession" of the defendant "by virtue of such employment" have been held to be sufficient, although the statute makes it a crime for any one to fraudulently convert property "under his care." Ker v. People, 110 Ill. 627, text 649.

It is contended that the indictment is defective because it fails to show "that, under the terms of the alleged employment of defendant, any obligation rested upon him to receive and disburse or keep moneys of the Atlantic Coast Line Railroad Company; that defendant's business, as servant or agent, was to receive money for the corporation." This contention cannot be sustained. It is sufficient to describe the defendant as a servant or agent, the terms used in the statute, without setting out in detail his duties or the purposes for which he was employed. 7 Ency. Pl. & Pr. 419; Wise v. State, 41 Tex. 139; Fleener v. State, 58 Ark. 98, 23 S. W. Rep. 1.

It is further contended that "the indictment does not charge that defendant was employed by the railroad company nor that defendant was in the service of the railroad company." We think the words "of which corporation, he, the said James N. Strobhar, was then and there the servant and agent" is a sufficient allegation that defendant was then and there the servant and agent of the corporation previously named, the Atlantic Coast Line Railroad Company, and that he was employed by, and in the service of, the said railroad company.

It is contended that the indictment fails to state the ownership of the money alleged to have been embezzled. Ownership of personal property is usually alleged by using the words "of the moneys of" the owner, or "of the property of," or "of the goods and chattels of" etc. The words "belonging to" are sufficient. No particular words are necessary. Clark's Crim. Proc. 231; Peeples v. State, 46 Fla. 101, 35 South. Rep. 223; Eastman v. State, 48 Fla. 21. 37 South. Rep. 576. We think, therefore, the words "of the money and property of said corporation," sufficiently allege the ownership of the seven thousand five hundred dollars, the money embezzled, to be in the Atlantic Coast Line Railroad Company.

It is contended that "there is no description of the money in the indictment." This contention is without merit. Where the grand jury does not know the specific description of money alleged to have been embezzled it may so aver; and the allegation of the embezzlement of a stated number of dollars, followed by the statement that a more particular description thereof is unknown to the indicting grand jury is all that is required to make the description sufficient. Porter v. State, 26 Fla. 56, 7 South. Rep. 145; Lang v. State, 42 Fla. 595, 28 South. Rep. 856; 25 Cyc. 78; Lewis v. State, decided at this term. It is contended, however, that the clause "a more particular description *of which* is to the grand jurors unknown" refers to the corporation, and is an excuse for not giving a more particular description of "said corporation." We think the clause relates to the money. The corporation had been fully described in a preceding part of the indictment.

The further contention is made that there is no allegation that the money embezzled came into the possession of the defendant. We think this allegation is made by the words "which on said 28th day of August, A. D. 1905, in said county of Alachua and state of Florida, came into the possession of him, the said James N. Strobhar, and was then and there under his care by nature of his said employment as such servant and agent." We do not think the clause "which on the said 28th day of August, A. D. 1905, in said county of Alachua and state of Florida, came into the possession of him," etc. refers or relates to the preceding words "grand jurors" or "corporation." The pronoun "which," as a relative, does not relate to the "grand jurors," or to "corporation." It refers to the money previously alleged. *Ad proximum antecedens fiat relatio, nisi impediatur sententia.* Broom's Legal Maxims, p. 679, Sec. 680.

Mr. Bishop says, "Some old authorities unvaryingly

refer a relative pronoun to the nearest antecedent; be·
cause, they assume, such is the rule in grammar. 'Else',
said Jeffreys, in Rosewell's case. 'Dr. Bushy that so
long ruled in Westminster School, taught me quite
wrong.' But as bad grammar never did render an in-
dictment ill, this sort of argument could never have any
just force. The relative 'must,' in the language of Mor-
ton, J., 'be referred to that antecedent to which the
tenor of the instrument and the principles of law require
that it should relate, whether exactly according to the
rule of syntax or not.' In other respects also, the court,
for determining the meaning, will consult sound sense,
to the disregard of captious objections. And of two
otherwise permissible renderings, it will accept the one
sustaining the proceeding." 1 Bishop's New Cr. Proc.
§ § 355, 356.

These objections go only to the form of the indict-
ment, and not to its substance. As we cannot say that
it is so vague, indistinct and indefinite as to mislead the
accused and embarrass him in the preparation of his
defense, or expose him after conviction or acquittal to
substantial danger of a new prosecution for the same
offense, the indictment will not be quashed. Section
3962 of the general statutes of 1906. This indictment is
inartificially drawn, and, as was said about the one like
it in Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938,
it does not commend itself as a precedent.

It is contended that "there is no certain allegation
that defendant did embezzle and fraudulently convert to
his own use any specific sum of money." It is urged
that "the videlicit, to-wit, does not comprehend money
any more than it does the railroad company, or the resi-
dence of the corporation or the agent of the corporation,
or the consent of the corporation." Under the videlicit
is set forth the quantity of the money previously alleged.
The indictment should be understood as charging the

embezzlement of "certain money of the Atlantic Coast Line Railroad Company, etc, etc. to-wit, namely seven thousand five hundred dollars," etc. We do not think the indictment so vague, uncertain and indefinite in this respect as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense.

Finally the indictment is said to be duplicitous, in that it charges two offenses prohibited by the statute and includes two classes of persons named in the statute." In support of this objection, it is contended that "the statute makes two offenses by the words 'embezzles *or* fraudulently converts,' and the indictment charges that defendant 'did embezzle *and* fraudulently convert;'" and that the statute makes "agent" and "servant" two distinct classes of employes, and the indictment charges defendant with being "servant *and* agent." There is no merit in these contentions. Mr. Bishop, in his work on Statutory Crimes, § 244, says: "If, as is common in legislation, a statute makes it punishable to do a particular thing specified, 'or' another thing, 'or' another, one commits the offense who does any one of the things, or any two, or more, or all of them. And the indictment may charge him with any one, or with any larger number, at the election of the pleader; employing, if the allegation is of more than one, the conjunction 'and' where 'or' occurs in the statute." Bradley v. State, 20 Fla. 738; King v. State, 17 Fla. 183. Besides this, in Teston v. State, 50 Fla. 137, text 142, we said that the word "embezzle" and the kindred phrase "fraudulently convert to his own use" mean the same thing. In Lewis v. State, decided this term, we said that the statute "prescribes the same penalty for the offense of embezzlement when committed by an agent as when committed by a servant of another, and because an indictment in a single

count describes the offender as occupying both positions conjunctively, that of agent and servant, at the time of the commission of the offense, does not render it bad for uncertainty."

The indictment, therefore, is not bad for duplicity. What we have said in reference to this assignment disposes of the second assignment of error also.

The action of the court in striking defendant's plea of *autrefois acquit* is made the basis of the third assignment of error. The plea is as follows: "And now on this 17th day of May, A. D. 1907, in open court, comes the defendant, the said James N. Strobhar, in his own proper person, as well as by counsel, and having heard the said indictment read, says, that the said The State of Florida, ought not further to prosecute the same against him, because he says that heretofore, to-wit: on the 23rd day of April, A. D. 1906, in the superior court of the county of Fulton, in the state of Georgia, a court of record, which then and there had full and competent jurisdiction in the premises, a grand jury of said court theretofore having been duly chosen, empanelled and sworn; after investigation of the facts and circumstances and charges involved, included and contained in the indictment herein, returned in said court a true bill of indictment against this defendant, for and on account of the same acts and doings complained of in the pending indictment, in which, the said defendant, the said James N. Strobhar, was charged with the offense, under the laws of the state of Georgia, of larceny after trust; that the said James N. Strobhar, by the name and description of the said James N. Strobhar, was in the said superior court of Fulton county, Georgia, duly arraigned and called upon to plead to the said indictment for larceny after trust so returned as aforesaid, and that being so called upon to plead, he, the said James N. Strobhar pleaded 'not guilty,' as charged in the said indictment,

and that the prosecutor, to-wit: the state of Georgia, joined issue on said plea, and thereupon, came a jury, duly summoned, empaneled and sworn to try the said issue, and after having heard the testimony of the witnesses, the argument of counsel, and the charge of the court in the premises, upon their oath, did say, that the said James N. Strobhar was not guilty of the felony in the said described indictment laid to his charge: Whereupon, it was by the said, the superior court of Fulton county, Georgia, considered and ordered, that he, the said James N. Strobhar, stand acquitted and discharged thereof, as by the record thereof more fully and at large appears.

And the said James N. Strobhar avers, that he was the defendant in the indictment recited in this plea, and so acquitted as aforesaid, and that he is the same person as stands here indicted, and not a different person, and that the offense in the said described indictment set out, and the one charged in the indictment to which this plea is pleaded, are one and the same offense, both in fact and in law, although the said charge is technically called 'larceny after trust' in the former indictment, in the superior court of Fulton county, Georgia; and is called technically 'embezzlement' in the indictment herein pleaded to, under the laws of the state of Florida, yet, the defendant alleges that they are one and the same offense, including identically the same facts; the same witnesses being necessary in each case, to establish the facts, and the same facts being necessary to be proven in each case. All of which the said James N. Strobhar is ready to verify.

Wherefore, having been once placed in jeopardy upon the identical charge, both in fact and in law, with which he stands here confronted and charged in the pending indictment now pleaded to, he prays judgment, and that by the court hereof, he may be dismissed and discharged

from the premises in the present indictment specified and contained.

All of which is respectfully submitted, and the defendant avers willingness to prove the allegations herein made."

The plaintiff moved to strike said plea on the following grounds:

"1.   The said plea is a nullity and is frivolous.

2.   The superior court of the county of Fulton, in the state of Georgia, has, and had, no jurisdiction to hear and determine an offense committed in Alachua county, Florida.

3.   The allegations in said plea that the said superior court of the county of Fulton, in the state of Georgia, had jurisdiction, is a mere conclusion of the pleader, without the statement of any fact showing jurisdiction in said court.

4.   It devolves upon the state to prove that the offense set forth in the indictment in this cause, was committed in Alachua county, Florida, as alleged in said indictment, and the courts of another state can have no jurisdiction over such offense.

5.   It appears from the plea that the offense for which the defendant had been tried and acquitted, was not one and the same offense as that for which he stands indicted in the instant case."

In support of this assignment, it is contended the plea is sufficient both in substance and in certainty, but, if deficient, the remedy is by demurrer and not a motion to strike.

Where the plea is plainly frivolous and trifling it may be stricken out on motion; and where the plea, if true, fails to state any reason why the defendant could not again be tried for said offense it will be treated as a nullity and frivolous and stricken out on motion. A demurrer is not necessary to dispose of such a plea. Ellis

v. State, 25 Fla. 702, 6 South. Rep. 768; State *ex rel.* v. Purcell, 31 West Va. 44, 5 S. E. Rep. 301; 16 Ency. Pl. & Pr., 583.

The special plea of *autrefois acquit* consists partly of matter of record and partly of matter of fact. The matter of record is the former indictment and acquittal or conviction, and the matter of fact is the averment of the identity of the offense and of the person. The plea must set out the record of the former proceedings, including the former indictment and the acquittal under it. The former indictment should be set out in full so that it may appear to the court therefrom, and by proper averments in the plea, that the former acquittal was for the same offense as the one for which the defendant is now indicted. I Bishop's New Cr. Proc. § 815; Clark's Crim. Proc. 405; Crocker v. State, 47 Ga. 568; Henry v. State, 33 Ala. 389; Smith v. State, 52 Ala. 407. The plea must also aver the identity of the defendant with the person formerly acquitted, and the identity of the offense charged in the first with that set forth in the last indictment.

The plea in the instant case is general. It does not set out in full the former indictment. The plea does not set forth the particulars of the offense for which the defendant was tried and acquitted in Georgia, the property involved therein is not described, neither is its value or ownership alleged. This plea was properly rejected on motion, as wanting those essential requisities of showing that the defendant was acquitted on a good indictment, in a court having jurisdiction and the identity of the fact charged. The plea does not show the record of acquittal of the other court. The attorney for the state could not do anything else but move to strike this plea. He could not plead *nul tiel* record, because no record was shown, and it would not have been proper to demur, since he might thereby have admitted the truth of the

plea. State v. Charles, 6 Minn. 474; Wortham v. Commonwealth, 5 Randolph, 660; Commonwealth v. Myers, 1 Virginia Cases, 188, text 230; Commonwealth v. Goddard, 13 Mass. 455; Foster v. State, 39 Ala. 229.

Moreover, to constitute a former jeopardy, the court in which the former prosecution took place must have had jurisdiction of the offense and of the person of the defendant; otherwise its judgment must be null and void. Clark's Crim. Proc. 387; Alford v. State, 25 Fla. 852, 6 South. Rep. 857. The plea shows upon its face that the superior court of Fulton county, Georgia, where the former prosecution took place, did not have jurisdiction of the offense for which the defendant was prosecuted. The plea shows that the defendant was prosecuted in Georgia for an offense committed in Florida. The plea does not attempt to make out the case of a continuing offense, as is contended for in argument of counsel, so as to give the court in Georgia jurisdiction of the offense charged. The laws of the state of Georgia could not be extended beyond its territorial limits so as to give its courts jurisdiction to try an offense against the sovereignty of the state of Florida alone. Phillips v. People, 55 Ill. 429.

Even if the plea is to be understood as meaning that the offense was committed both in Georgia and Florida, and was a transgression against the laws of both states, a conviction or an acquittal in the state of Georgia for a violation of its laws would not prevent a prosecution in the state of Florida for the act in violation of the laws of the latter state. Section 3185 of the General Statutes of 1906; 1 Bishop's New Cr. Law, §983; 17 Am. & Eng. Ency. Law (2nd ed.) 604; Moore, Ex. v. People, 14 How. (U. S.) 13; Marshall v. State, 6 Neb. 120, S. C. 29 Am. Rep. 363. In Marshall v. State, supra, the Nebraska court said: "Do the facts stated in the plea constitute a bar or defense to the plaintiff in

this state? The plea alleges the former conviction was had in the state of Illinois. This is a foreign state, and the principle seems well settled that the laws of a country do not extend beyond its territorial limits; and therefore it is said to be 'an obvious principle that the maxim and rule of constitutional law cannot span country and country in such a way as to cause a jeopardy in one country to free the party from trial in another. On the one hand, it cannot prevent a foreign government from prosecuting for crime a person who has been tried for the same offense by our courts, and on the other hand, it cannot exempt from prosecution here, one who has been tried abroad.' "

And so granting as true all that the plea attempts to show and that the same was sufficiently pleaded, the plea would fail to state any reason why the defendant could not again be tried for the offense charged to have been committed by him in the county of Alachua and state of Florida. The plea is a nullity and frivolous and was properly stricken on motion. 9 Ency. Pl. & Pr. 640; Shubert v. State, 21 Tex. App. 551, 2 S. W. Rep. 883; Wortham v. Commonwealth, *supra;* Ellis v. State, *supra.*

The fourth and fifth assignments of error are based upon the denial of the motion in arrest of judgment. The questions raised by these assignments are covered and disposed of by what has been said in the discussion of the first assignment.

The sixth, seventh and eighth assignments have been argued and will be considered together. They question the authority of the court to sentence the defendant to the state penitentiary.

Embezzlement is punished the same as larceny (section 3311, General Statutes of 1906) and Chapter 4395, acts of 1895, provides that petit larceny, the larceny of property of the value of less than twenty dollars, may be

punished by imprisonment in the county jail not exceeding three months, and grand larceny, that is where the property stolen is of the value of twenty dollars or more, may be punished by imprisonment in the state penitentiary not exceeding five years.

The defendant was sentenced to the state's prison for three years. Since the defendant was convicted of embezzlement of seven thousand five hundred dollars, the provisions of Chapter 4395, acts of 1895, would authorize the sentence imposed in this case. It is contended by counsel, however, that the title of Chapter 4395, acts of 1895, is not sufficiently broad to embrace the subject of grand larceny. In reference to the same contention this court, in ex parte Bush, 48 Florida, 69, 37 South. Rep. 177, said: "It becomes unnecessary for us to determine whether or not the title of said act, as printed on page 159 of the acts of 1895, is so defective as to render the same unconstitutional for the reason that the title of said act, as shown from the enrolled bill in the office of the secretary of state, is as follows: 'An act to amend sections 2440 and 2441 of the Revised Statutes of the state of Florida, Defining and Punishing Grand and Petit Larceny,' which is unquestionably sufficient."

The ninth assignment of error is, "The court erred in overruling defendant's objections to the admissibility in the several instances during the progress of the trial as shown by the record of the testimony." The tenth assignment is similar to the ninth. These assignments are too general and will not be considered. Hodge v. State, 26 Fla. 11, 7 South. Rep. 593; Newberry v. State, 26 Fla. 334, 8 South. Rep. 445; Maloy v. State, 39 Fla. 432, 22 South. Rep. 719.

The eleventh assignment of error is based upon the refusal of the court to give the following instruction requested by defendant: "3. The court instructs the

jury, that upon the trial of a criminal cause, if a reasonablt doubt of any facts necessary to convict the accused is raised in the minds of the jury, by the evidence itself, or by the ingenuity of counsel, upon any hypothesis reasonably consistent with the evidence, that doubt is decisive in favor of the prisoner's acquittal."

The court did not err in refusing to give this charge. As long ago as the decision in Doggett v. Jordan, 2 Fla. 541, this court said the jury must base their verdict upon the evidence before them. "The jurors are triers of the facts not upon their own personal knowledge, but from the evidence before them." By the terms of their oaths the jurors are bound to "well and truly try the issue between the state of Florida and the defendant *according to the evidence.*" The jury should not be controlled in a decision of the facts by the argument of counsel as against their own judgment. It may be that the ingenuity of counsel sometimes controls and shapes the verdict of the jury. It is the province and duty of the conscientious counsel, who defends the prisoner charged with crime, to exercise his ingenuity in raising in the minds of the jury a reasonable doubt of the guilt of the defendant upon any hypothesis reasonably consistent with the evidence. As was so well and truly said by Judge NISBET in Garrison v. Wilcoxson, 11 Ga. 154, quoted approvingly in Gibson v. State, 26 Fla. 109, 7 South. Rep. 376: "The true view of the position of counsel, before the jury, is that of aids or helps. They are officers of the court—amenable to its authority, subject to its correction, and restrained by usages of honor and courtesy, which, however in some instances disregarded, are as ancient in their origin and as potent for good, and as generally respected, as any usages which belong to any class of the highest grade of civilized man. The duties of the advocate are among the most elevated functions of humanity. Whilst he is the representative of his

client's cause, yet these considerations insure all honorable advocacy. His business is to comment on the evidence—to sift, compare and collate the facts—to draw his illustrations from the whole circle of the sciences—to reason with the accuracy and power of the trained logician, and enforce his cause with all the inspirations of genius, and to adorn it with all the attributes of eloquence." While in reality, jurors frequently adopt the reasoning of counsel, and are influenced by their ingenuity, it cannot be said as a matter of law that a reasonable doubt of any fact necessary to convict the accused, raised, in the minds of the jury by the *ingenuity* of counsel, is decisive in favor of the prisoner's acquittal. This charge is misleading in that it is likely to be interpreted by the jury to mean that such a doubt suggested or raised by the ingenuity of counsel would be decisive of the question—that they should be controlled in a decision of the facts by the argument or ingenuity of counsel—as against their own judgment. See People v. Wells, 112, Mich. 648. Counsel are not at liberty to exercise their ingenuity without restraint. The court may refuse to permit counsel to call attention of the jury to the punishment for the crime of which the defendant stands charged. Eggart v. State, 40 Fla. 527, 25 South. Rep. 144. Prosecuting officers will not be allowed to comment on the failure of an accused to testify as a witness in his own behalf. Gray v. State, 42 Fla. 174, 28 South. Rep. 53; Jackson v. State, 45 Fla. 38, 34 South. Rep. 243. The judge may warn the jury against trying the case on their sympathies. Lindsey v. State, 53 Fla. 56, 43 South. Rep. 87. As it is error for the judge to attempt in a charge to substitute his inference upon the facts for what should be the inference of the jury, Pinson v. State, 28 Fla. 735, 9 South. Rep. 706, so also it would be erroneous for the judge to authorize the substitution of the inference of counsel upon

the facts for the inference of the jury. This charge unduly singles out and gives undue prominence to the effect of the ingenuity of counsel, and for this reason the court should have not given it.

The twelfth assignment of error is based upon the refusal of the court to give the following instruction asked for by defendant:

"7. The jury are requested by the court, that in this case, the burden of proof rests upon the prosecution to make out and prove to the satisfaction of the jury, beyond all reasonable doubt, every material allegation in the indictment, and unless that has been ·done, the jury should find the defendant not guilty."

In other instructions given by the court, he stated all the material facts necessary to constitute the offense for which the defendant was on trial, and told the jury that all such facts must be proved beyond a reasonable doubt. Of his own motion the court gave the following instructions to the jury:

"4. If the jury believe from the evidence, beyond a reasonable doubt, that the defendant, James N. Strobhar, within the county of Alachua, and state of Florida, being then and there the agent of the Atlantic Coast Line Railroad company, a corporation, and by reason of his employment as such agent of said company, received and took into his possession a certain sum of money, belonging to the said Atlantic Coast Line Railroad Company as alleged and set forth in the indictment; and afterwards, in the month of August, 1905, fraudulently converted or appropriated the same to his own use, without the consent of the said Atlantic Coast Line Railroad Company, you will find the defendant guilty as charged."

"7. The defendant is presumed to be innocent until he is proven to be guilty beyond a reasonable doubt. He is entitled to every reasonable doubt arising from the evidence, and a reasonable doubt is one conformable to

reason, a doubt which a reasonable man would entertain. It does not mean a mere possible doubt, because everything relating to human affairs and depending on moral evidence is open to some possible imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the truth of the charge."

At the request of the defendant, the court gave the following instructions:

"5. The court further instructs the jury that in this case the law does not require the defendant to prove himself innocent, but, the law imposes upon the prosecution to prove that the defendant is guilty, in manner and form as charged in the indictment, to the satisfaction of the jury, beyond all reasonable doubt; and unless they have done so, the jury should find the defendant not guilty."

"8. The court further instructs the jury that this is not a civil case, but is a criminal prosecution; and that the rules as to the amount of the evidence in this case, are different from those in a civil case, and a mere preponderance of the evidence would not warrant the jury in finding the defendant guilty, but, before the jury can convict the defendant, they must be satisfied of his guilt, beyond all reasonable doubt, and unless so satisfied, the jury should find the defendant not guilty."

"11. The defendant in a criminal case, is not required to prove his innocence, but it is incumbent on the state to establish his guilt by proving all the material allegations in the indictment, and until this is done, the defendant is not called upon either to testify himself, or to submit evidence of his innocence."

These instructions went too far in requiring proof of the venue beyond a reasonable doubt, Warrace v. State, 27 Fla. 362, 8 South. Rep. 748, but the defendant

cannot complain of this. Having already given, in sub-stance and effect, the 7th instruction requested by the defendant, the trial judge could not be required to repeat the same idea in different language. Sherman v. State, 17 Fla. 888; Woodruff v. State, 31 Fla. 320, 12 South. Rep. 653.

The thirteenth and fourteenth assignments of error are based upon the overruling of defendant's motion for a new trial. The only contention made in support of this assignment is, that the verdict is contrary to the evi-dence and the charge of the court.

We have read and considered carefully the evidence in this case. It is voluminous, and no good purpose will be subserved by setting it out *in extenso* here. The evidence was legally sufficient to support the verdict. The jury passed on it. The court approved it. The defendant had a fair trial. The judgment is affirmed.

TAYLOR and HOCKER, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.